UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DONALD J. NALTY, JR.                             CIVIL ACTION

VERSUS                                           NO. 23-6409

LAWRENCE X. BOUCVALT, III, *et al.*              SECTION M (5)

## ORDER & REASONS

Before the Court is a motion to dismiss filed by defendant Lawrence X. Boucvalt, III.[1] Plaintiff Donald J. Nalty, Jr. responds in opposition,[2] and Boucvalt replies in further support of his motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion and dismisses the case because Nalty has failed to join a required party whose joinder would deprive the Court of subject-matter jurisdiction.

## I. BACKGROUND

This matter involves a dispute between two members of a limited liability company, which has now led to one member's unilateral request for dissolution of the company. Boucvalt started Environmental, Safety & Health Consulting Services, Inc. (the "Corporation") in 1994.[4] He is the president of the Corporation and was its majority shareholder.[5] Boucvalt describes the Corporation as a successful "full-service oil field and emergency response company specializing in environmental cleanup and mitigation, and hazmat cleanup."[6] In 2010, Boucvalt hired Nalty as vice president of the Corporation and transferred 20 of his 100 shares to him.[7] Then, in 2011,

---

[1] R. Doc. 25.
[2] R. Doc. 29.
[3] R. Doc. 30.
[4] R. Doc. 25-1 at 2.
[5] *Id.*
[6] *Id.*
[7] *Id.* at 2-3.

Nalty and Boucvalt transferred all of their shares in the Corporation to a newly formed company, E S & H Holdings, L.L.C. (the "Holding Company").[8] In doing so, Nalty and Boucvalt executed an operating agreement, which made Boucvalt and Nalty the Holding Company's sole members.[9] Boucvalt and Nalty retained the same ownership interest percentages – that is, Boucvalt received 80% of the membership interest and Nalty received 20%.[10] The Holding Company was managed by its three managers, Boucvalt, Nalty, and Charles M. LeCompte.[11]

Nalty alleges that he and Boucvalt began disagreeing over the Holding Company's operations and that this culminated in Boucvalt's decision to terminate Nalty as chief operating officer and vice president of the company on February 21, 2023.[12] Nalty further alleges that since his termination, Boucvalt has refused to authorize distributions to him and has denied him access to the company's books and records, in violation of the operating agreement.[13] Article X of operating agreement provides that a member owning at least five percent of the Holding Company has the following rights:

1. To have the Company books kept at the principal place of business of the Company or such other place as the Managers may designate, and at all times to inspect and copy any of them.

2. To have on demand full and true information of all things affecting the Company and a formal accounting of the Company affairs whenever circumstances render it just and reasonable.

3. To have a voluntary or judicial dissolution and winding up of the affairs of the Company in accordance with the provisions contained in this Operating Agreement; and

4. To demand and receive an annual accounting and a final accounting on dissolution of the Company.[14]

---

[8] *Id.* at 3; *see also* R. Doc. 1 at 3-4.
[9] R. Docs. 25-1 at 3; 25-5.
[10] R. Docs. 1 at 4; 25-5 at 3.
[11] R. Docs. 25-1 at 4; 25-5 at 7.
[12] R. Doc. 25-1 at 6-7.
[13] *Id.* at 7-8.
[14] R. Doc. 25-5 at 8.

Article XX of the operating agreement, entitled "Termination, Dissolution and Liquidation of Company," further provides:

> A.   The Company may be terminated upon the first to occur of the following:
>
>   1. The sale of all or substantially all of the property of the company, or
>
>   2. Withdrawal of any Member, either voluntarily or involuntarily, or by death, or
>
>   3. The consent of the Members owning and holding a majority of the Units issued and outstanding of the Company.
>
> B.   In the event this Company is dissolved for any cause, the Managers shall make a full and general accounting of the Company business and the affairs of the Company will be wound up and liquidated as soon as possible.  The proceeds of such winding up shall be distributed in the following order: (i) to creditors, in the order or priority as provided by law, (ii) to the extent of each Member's accumulated adjustments account balance, and (iii) thereafter, pro rata in accordance with each Member's Capital interest in the Company.
>
> C.   No Member shall have the right to a partition of the assets of the Company, such right of partition being expressly waived and renounced.[15]

On October 19, 2023, Nalty filed suit against Boucvalt and his wife, Brandi F. Boucvalt,[16] in this Court, asserting that it has diversity subject-matter jurisdiction over the case pursuant to 28 U.S.C. § 1332.[17]  In the complaint, Nalty alleges that his relationship with Boucvalt "has become irreconcilably strained" and that "it is no longer reasonably practicable for the members of ES&H to carry on business as contemplated by the Operating Agreement."[18]  Nalty requests: (1) a writ of mandamus, compelling Boucvalt to recognize, among other things, Nalty's rights to have a judicial dissolution and winding-up of the Holding Company's affairs, to inspect its books and records,

---

[15] *Id.* at 28-29.
[16] Nalty acknowledges in his complaint that Brandi Boucvalt is named "out of an abundance of caution," since she signed the operating agreement merely to acknowledge and assert her undivided one-half community property interest in Boucvalt's membership interest. R. Doc. 1 at 4.
[17] *Id.* at 1-2.
[18] *Id.* at 8.

and to receive an accounting of its affairs;[19] (2) a declaratory judgment declaring that certain provisions of the operating agreement are valid and enforceable;[20] (3) a decree of judicial dissolution of the Holding Company;[21] and (4) a preliminary and permanent injunction prohibiting Boucvalt from interfering with Nalty's exercise of his right to dissolve and wind up the Holding Company.[22]  Boucvalt filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (7).[23]

## II. PENDING MOTION

Boucvalt argues that the Holding Company is a required party pursuant to Federal Rule of Civil Procedure 19 because it is the entity Nalty seeks to have dissolved and is the proper defendant for certain of Nalty's claims, such as his demands for an accounting and access to company records.[24]  Boucvalt further argues that, although the Holding Company is required to be joined as a party defendant, joinder is not "feasible" because it would destroy diversity and deprive the Court of subject-matter jurisdiction since the Holding Company, like its members, is a citizen of Texas and Florida.[25]  Thus, contends Boucvalt, because the action cannot "in equity and good conscience" proceed among the existing parties, it must be dismissed under Rule 19(b).[26]

In opposition, Nalty argues that the Holding Company is not a required party because it has already been dissolved and that Nalty is merely asking the Court to oversee its windup,

---

[19] *Id.* at 8-10.
[20] *Id.* at 10-11.
[21] *Id.* at 11-13.
[22] *Id.* at 13-16.
[23] Boucvalt also urges dismissal under Rule 12(b)(6), arguing that the complaint fails to state a claim upon which relief can be granted since it does not allege sufficient facts necessitating the "drastic relief" of dissolution, R. Doc. 25 at 1-2, and because the claims for an accounting and access to the company's books and records are not properly asserted against him but must be brought against the Holding Company. *Id.* at 2. Because the Court dismisses the case pursuant to Rules 12(b)(1) and (7), it need not address these alternative arguments.
[24] R. Doc. 25-1 at 13-17.
[25] *Id.*
[26] *Id.* at 17-18.

liquidation, and sale process.[27] Nalty contends that he dissolved the Holding Company on October 19, 2023, and provided notice of its dissolution to Boucvalt that same day, via email, advising Boucvalt that he "has exercised his right to the voluntary and judicial dissolution of ES&H Holdings, LLC pursuant to Article X of … the Operating Agreement and, in connection therewith, has filed the attached lawsuit."[28] Nalty further argues that he brought these claims against Boucvalt, personally, because Boucvalt refuses to cooperate with the windup process.[29]

In reply, Boucvalt argues that Nalty could not have unilaterally dissolved the Holding Company since he lacks the power to do so under both the operating agreement and Louisiana statutory law.[30] Boucvalt contends that the events listed in Article XX(A) of the operating agreement are required for not just termination of the Holding Company, but also its dissolution.[31] Boucvalt further asserts that Nalty's claim that he already dissolved the company is inconsistent with the relief he requests in the complaint, including, most notably, judicial dissolution of the Holding Company.[32] Because the company is not dissolved, says Boucvalt, it is a real party in interest that must be joined.[33]

### III. LAW & ANALYSIS

#### A. Rule 12(b)(7) Standard

Rule 12(b)(7) of the Federal Rules of Civil Procedure requires the dismissal of claims when a plaintiff fails to join a required party to the lawsuit pursuant to Rule 19. "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue." *Orpheum Prop., Inc. v. Coscina*, 2018 WL 1518471, at *3 (E.D. La. Mar.

---

[27] R. Doc. 29 at 1-2, 11-23.
[28] *Id.* at 7; R. Doc. 29-1.
[29] R. Doc. 29 at 23-25.
[30] R. Doc. 30 at 3-5.
[31] *Id.* at 9-10.
[32] *Id* at 3.
[33] *Id.* at 5-8.

5

28, 2018) (citing *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986) ("The federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of. In accord with this goal, Rule 19 seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder.") (internal citation and footnote omitted)). "It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *Id*.

Rule 19 "sets forth a two-step inquiry for a district court to determine whether a party should be joined in an action. First, the court must determine whether the party is necessary to the action under Rule 19(a). If the court determines that the party is necessary, it must then determine whether the party is indispensable to the action under Rule 19(b)." *Orpheum Prop.,* 2018 WL 1518471, at *5; *see also Hood ex rel. Miss. v. City of Memphis,* 570 F.3d 625, 629 (5th Cir. 2009) ("the court must … determine whether [the absent] person is 'indispensable,' that is, whether litigation can be properly pursued without the absent party").

> A person is a required party whose joinder is necessary under Rule 19(a)(1) if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). In sum, "[t]here are three types of 'required' parties: (1) parties needed to give complete relief to the existing parties; (2) parties who claim interests which could be practically impaired or impeded if not joined; and (3) parties necessary to ensure that existing

parties are not exposed to multiple or inconsistent obligations." *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 265-66 (5th Cir. 2022) (internal citations omitted), *cert. denied*, 143 S. Ct. 1054 (2023). The party advocating joinder has the initial burden of demonstrating that an absent party is necessary, but "the burden of disputing this initial appraisal falls on the party who opposes joinder." *See Pulitzer*, 784 F.2d at 1309; *see also Lee*, 47 F.4th at 266 ("The burden of proof starts with the movants, but if at first glance it appears a 'possibly necessary party is absent,' the burden shifts to the nonmovant to dispute that 'initial appraisal' of the facts.") (quoting *Hood*, 570 F.3d at 628).

If joinder is appropriate under Rule 19(a)(1), but such joinder would destroy the court's jurisdiction, the court must determine whether "in equity and good conscience" the lawsuit can proceed without the absent party or should be dismissed. Fed. R. Civ. P. 19(b); *see Pulitzer*, 784 F.2d at 1309 ("[I]f joinder is called for, then Rule 19(b) guides the court in deciding whether the suit should be dismissed if that person cannot be joined."). Rule 19(b) directs that a court consider these factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). No single factor is dispositive. *See Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316, 1325 (Fed. Cir. 2020) (concluding that "the district court abused its discretion by collapsing the multi-factorial Rule 19(b) inquiry into one dispositive fact: UT's status

7

as sovereign"). Resolving whether a party is required under Rule 19(b) is a practical, fact-based inquiry, wherein the various harms that the parties and the absentees might suffer are balanced. *See, e.g., Hood,* 570 F.3d at 628; *Kelly v. Com. Union Ins. Co.*, 709 F.2d 973, 978 (5th Cir. 1983) (observing that "pragmatic concerns" control the determination whether a party is indispensable).

Joining a party under Rule 19(b) may affect a court's subject-matter jurisdiction. If the joinder of a required party under Rule 19(b) destroys a court's diversity subject-matter jurisdiction, a court must decide whether it should dismiss the case pursuant to Rule 12(b)(7).

### B. The Holding Company Is Required to Be Joined in This Action

#### 1. The Holding Company is a necessary party.

The Holding Company is a necessary party under Rule 19(a) because, in its absence, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Nalty has asked for at least two kinds of relief that can only proceed against the Holding Company. First, Nalty requests a declaratory judgment recognizing Nalty's rights to inspect the Holding Company's books, receive an annual accounting, and receive a final accounting upon dissolution, or a writ of mandamus compelling Boucvalt to recognize these rights.[34] While the operating agreement permits a minority member to inspect and copy the company books and "demand … a formal accounting of the Company affairs whenever circumstances render it just and reasonable,"[35] such claims must be asserted against the Holding Company, not a co-member. *See, e.g.*, *Williams v. Holmes*, 2023 WL 2989465, at *3 (E.D. La. Apr. 18, 2023) ("[W]hile she emphasizes in her opposition to [d]efendant's motion to dismiss that she brings her accounting claims against [defendant] in his personal capacity, she does not point to any authority that a claim

---

[34] R. Doc. 1 at 8-11.
[35] R. Doc. 25-5 at 8.

8

for accounting can be brought against an individual. Such a claim could, however, proceed against the LLCs under La. Rev. Stat. 12:1319.").

Nalty's attempt to differentiate *Williams* – stating that he is not asking for an order compelling Boucvalt to provide an accounting but is asking for an order compelling Boucvalt to permit the Holding Company to provide an accounting – is unavailing. Under Louisiana law, a limited liability company, or LLC, is a juridical person with a separate legal existence from the members who comprise the entity. *S. La. Ethanol, LLC v. CHS-SLE Land, LLC*, 2012 WL 208828, at *2-3 (E.D. La. Jan. 23, 2012). Nalty's claims for inspection and accounting must be brought against the LLC.

Second, Nalty asks the Court to "enter a decree of judicial dissolution pursuant to La. Rev. Stat. §§ 12:1334 and 12:1335" and requests an order compelling Boucvalt to cooperate in the dissolution, sale, windup, or liquidation of the Holding Company.[36] Courts have routinely held that an entity sought to be dissolved has a substantive interest in such litigation. *See S. La. Ethanol*, 2012 WL 208828, at *2; *In re Sec. First, LLC*, 2020 WL 5736586, at *4-5 (M.D. La. Aug. 26, 2020), *adopted*, 2020 WL 5733194 (M.D. La. Sept. 24, 2020); *Mayeux v. Mayeux*, 2022 WL 2298422, at *3-4 (W.D. La. June 3, 2022), *adopted*, 2022 WL 2292822 (W.D. La. June 24, 2022). Additionally, the Court cannot enjoin Boucvalt from selling, or compel him to sell, property owned by the Holding Company (including, primarily, the Holding Company's principal asset – the Corporation itself) as any right to sell such property belongs to the company. *See Williams*, 2023 WL 2989465, at *3. Because Nalty is seeking to dissolve the Holding Company, and because its assets are at stake in this litigation, the Holding Company is a necessary party.

---

[36] R. Doc. 1 at 11-13.

However, Nalty contends that the Holding Company is not a necessary party because it was dissolved on October 19, 2023, upon his bringing suit for its dissolution and notice to Boucvalt about the dissolution. It is true that courts have held that dissolved companies are not required parties. *See, e.g.*, *Orpheum Prop.*, 2018 WL 1518471, at *7 ("Plaintiff represents – and [d]efendants do not dispute – that Coscina Brothers now has no assets or income, and the company is 'all but dead.' Therefore, any judgment in favor or against Coscina Brothers would not be prejudicial to the parties in this litigation.'"). Because the status of a company is "highly relevant" to whether the company is a required party, the Court must determine whether the Holding Company has been dissolved. *See Caytrans Project Servs. Ams., Ltd. v. BBC Chartering & Logistics GmbH & Co.*, 861 F. App'x 556, 562 (5th Cir. 2021).

Nowhere in the complaint does Nalty state that the Holding Company has already been dissolved. Instead, Nalty asks the Court to "enter a decree of judicial dissolution pursuant to La. Rev. Stat §§ 12:1334 and 12:1335," and states that "[i]n connection with and *prior to the dissolution* of [the Holding Company], Mr. Nalty further respectfully requests that this Honorable Court take all reasonable, necessary, and appropriate steps and actions to wind up the affairs of" the Holding Company.[37] Nalty's request for judicial dissolution would have been an unnecessary step, or at least rendered moot, if the Holding Company were already dissolved. *See Krispy Krunchy Foods LLC v. Jenna Mktg. LLC*, 2021 WL 5990000, at *3 (W.D. La. Dec. 17, 2021) ("[I]t appears that [the defendant's] Notice of Intent to withdraw … is indeed a voluntary dissolution as defined in the organizational document. Consequently, as to the dissolution of the California and Phoenix limited liability companies, there is no need for Court intervention."); *Sapienza v. Trahan*, 2019 WL 2494500, at *1 (W.D. La. June 13, 2019) ("Count Fifteen for judicial dissolution became

---

[37] *Id.* at 12 (emphasis added).

10

moot when [d]efendants agreed to dissolve [the company].").  It has long been established in Louisiana that the mere act of filing suit seeking dissolution does not, *ipso facto*, operate an entity's dissolution.  *See Bagnetto v. Bagnetto*, 51 La. Ann. 1200, 25 So. 987 (1899) (involving judicial dissolution of a partnership).  There is nothing in either the operating agreement or the Louisiana statutes governing dissolution that makes the filing of a suit seeking dissolution of an LLC, or the notice of same, self-executing, as to have the effect of immediately and unilaterally dissolving the LLC.  And Nalty cites no authority to this effect.

Not only has Nalty failed to show that he dissolved the Holding Company before filing suit (or in filing suit), but he has also failed to show that he had the ability to do so.  Louisiana law on the dissolution of LLCs is set out in La. R.S. 12:1334 and 12:1335.[38]  Section 1334, which deals with dissolution in general, provides:

> Except as provided in the articles of organization or a written operating agreement, a limited liability company is dissolved and its affairs shall be wound up upon the first to occur of the following:
>
> (1)   The occurrence of events specified in writing in the articles of organization or operating agreement.
> (2)   The consent of its members in accordance with R.S. 12:1318.
> (3)   Repealed by Acts 1997, No. 717, §2, eff. July 8, 1997.
> (4)   Entry of a decree of judicial dissolution under R.S. 12:1335.

La. R.S. 12:1334.  And section 1335, which deals with judicial dissolution in particular, provides:

> On application by or for a member, any court of competent jurisdiction may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.

*Id.* 12:1335.

---

[38] Section 1335.1 also provides for dissolution by affidavit when an LLC is no longer doing business and owes no debts, La. R.S. 12:1335.1, but no party suggests that this provision is relevant to this case.  After all, both the Holding Company and its principal asset, the Corporation, are fully operational, successful businesses by all accounts.

11

The Holding Company's operating agreement itself addresses dissolution in articles X and XX. "'An operating agreement is contractual in nature; thus, it binds the members of the LLC as written and is interpreted pursuant to contract law.'" *Kidd v. Symbion, Inc.*, 2011 WL 4020814, at *12 (E.D. La. Sept. 9, 2011) (quoting *Risk Mgmt. Servs., LLC v. Moss*, 40 So. 3d 176, 180 (La. App. 2010)). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. However, "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." *Id.* art. 2048. "Any doubtful provision should be interpreted 'in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.'" *Melder v. State Farm Mut. Auto. Ins. Co.*, 162 So. 3d 438, 448 (La. App. 2015) (quoting La. Civ. Code art. 2053).

Article X of the operating agreement permits a minority member "[t]o have a voluntary or judicial dissolution and winding up of the affairs of the Company *in accordance with the provisions contained in this Operating Agreement*."[39] This is the provision upon which Nalty relies. But, in itself, it does not give Nalty the authority to unilaterally effect a dissolution of the Holding Company. Instead, to have a *voluntary* dissolution, the provision expressly requires that the parties look to other "provisions contained in this Operating Agreement." The only other relevant provision of the Holding Company's operating agreement is article XX, which is entitled "Termination, Dissolution and Liquidation of Company," and states that the Holding Company "may be terminated upon" either "[t]he sale of all or substantially all of the property of the company," or the withdrawal or death of any member, or "[t]he consent of the Members owning

---

[39] R. Doc. 25-5 at 8 (emphasis added).

and holding a majority of the Units [*i.e.*, membership interests] issued and outstanding of the Company."[40] Notably, under the operating agreement, dissolution of the Holding Company upon the kind of sale or withdrawal contemplated by article XX cannot occur without the consent of members holding a majority membership interest in the Holding Company.[41] Thus, because Boucvalt has an 80% membership interest in the Holding Company, none of these actions toward voluntary dissolution can take place without his consent and he has not given it.

Nalty's response is that article XX deals with termination, not dissolution, and they are not the same. Termination occurs at the end of the dissolution process. As one Louisiana civil law treatise explains, "[t]he events that cause a dissolution under LSA-R.S. §§ 12:1334 and 12:1335 do not cause the existence of the LLC to terminate. They merely begin the winding up process that will later result in such a termination. Only when that process has been completed will the LLC 'dissolve' in the sense that it will no longer exist as a separate juridical person." 8 G. MORRIS & W. HOLMES, LA. CIV. L. TREATISE: BUSINESS ORGANIZATIONS § 44:25 (2023). This understanding of the Louisiana law on LLCs is consistent with reading articles X and XX together as addressing the events of dissolution that will result in termination. However, if the conditions laid out in article XX(A) were read to apply only to termination, as Nalty urges, the operating agreement would lead to an absurd result: a minority member could purport to act unilaterally, as here, to dissolve the company pursuant to article X(A), but the company would not terminate until the occurrence of one of the three events listed in article XX(A), which all require Boucvalt's consent. In other words, Nalty could cause a voluntary dissolution of the Holding Company, but he could not cause its termination until Nalty received Boucvalt's consent. A dissolution of the LLC that may never result in its termination makes no sense. Accordingly, article XX(A) must

---

[40] *Id.* at 28.
[41] *Id.* at 6-8, 20.

apply to both termination and dissolution, as its heading plainly suggests, and there has been no *voluntary* dissolution.

Nalty then argues that the Holding Company has been judicially dissolved because the contingency for dissolution set out in section 1335 – namely, "whenever it is not reasonably practicable [for the LLC] to carry on the business in uniformity with the articles of organization or operating agreement" – has been triggered. But this puts the proverbial cart before the horse. The purpose of a suit seeking judicial dissolution is to allow a court, as an impartial arbiter, to determine whether it is reasonably practicable for the LLC to carry on business. And, here, the parties differ on this score: Nalty maintains that his differences with Boucvalt, and Boucvalt's actions with the Holding Company since Nalty's firing, demonstrate that the company can no longer reasonably conduct business, while Boucvalt maintains that his majority interest in the Holding Company guarantees against any deadlock in the company's management and the company's business has been carried on effectively by new managers despite Nalty's absence. With this suit at its beginning stages, the determination whether it is reasonably practicable for the Holding Company to carry on business has not been made, so there has not yet been any *judicial* dissolution.

In sum, because the Holding Company has not been voluntarily dissolved, and this litigation seeks to have it judicially dissolved, the Holding Company is a necessary party.[42]

### 2. The Holding Company is an indispensable party.

Having found that the Holding Company is a necessary party, the Court must next determine whether the Holding Company is an indispensable party – that is, whether "in equity

---

[42] The cases cited by Nalty for the proposition that the Holding Company is a nominal party are distinguishable. The LLC sought to be joined in *Gambel v. Tullis*, 2017 WL 3336629, at *1, *7-8 (E.D. La. Aug. 4, 2017), was merely a "family investment vehicle" created for the benefit of certain heirs, not the fully functioning businesses operating here as the Holding Company and the Corporation. And, in *Wolff v. Wolff*, 768 F.2d 642, 645-46 (5th Cir. 1985), and *Paddison v. Paddison*, 2019 WL 1616577, at *3-4 (E.D. La. Apr. 16, 2019), the courts concluded that no relief was being sought from the absent companies and that their joinder was solely for the purpose of performing ministerial duties. As reviewed above, that is not the case here.

and good conscience" the lawsuit can proceed without the absent party or should be dismissed. This requires consideration of the four Rule 19(b) factors.

The first factor – the extent to which a judgment rendered in the Holding Company's absence might prejudice the defendant or absent party – weighs against proceeding without the Holding Company. Because several of Nalty's claims are brought against Boucvalt, personally, rather than the Holding Company, Boucvalt would be prejudiced if the Holding Company is not joined. *See Williams*, 2023 WL 2989465, at *4 ("[T]he Plaintiff has sought relief that can only be afforded against the LLCs, and therefore 'equity and good conscience' dictate that an action cannot proceed among only the existing parties [*viz.*, the LLC members].").

The Holding Company would also be prejudiced if not joined in the litigation. Nalty seeks a declaration that certain terms of the operating agreement are valid and enforceable.[43] Even more, the Holding Company would suffer prejudice since it is the entity sought to be dissolved. *See e.g.*, *In re Sec. First*, 2020 WL 5736586, at *4 ("[T]he litigation at hand, as in *South Louisiana Ethanol*, is for dissolution of Security First, during which the LLC will be 'eviscerated' and divested of its ownership of all property. While [the LLC members] are the parties at odds with each other, nothing in the Petition, or elsewhere, indicates that these two parties are liable to each other and/or that either has title to the property owned by Security First."); *Mayeux*, 2022 WL 2298422, at *3-4 ("[Plaintiff] is seeking to dissolve MYU Family, LLC by nullifying its articles of organization, initial report, and operating agreement and to divest it of the property that he claims was fraudulently transferred to it. Therefore, the company has a substantive interest in this litigation

---

[43] R. Doc. 1 at 10-11 ("Mr. Nalty respectfully requests [that] the Court issue a declaratory judgment declaring that the rights of Mr. Nalty under Articles X and XXIII of the Operating Agreement and Mr. Nalty's rights under La. Rev. Stat. § 12:1319(B), as set forth in Paragraphs 31-33 of this Complaint [seeking recognition of Nalty's rights to inspect the Holding Company's books, demand company information, and receive accountings] are valid and enforceable and binding upon the managers and members of ES&H.").

15

and is not merely a nominal party." (footnote omitted)); *Masters v. Harkleroad*, 303 F. App'x 859, 861 (11th Cir. 2008) ("[W]e have found no authority, and Petitioners cite none in their letter brief, holding that a LLC which a plaintiff seeks to put into receivership, dissolve, and enjoin from engaging in any business activity is merely a nominal party."). Such a claim "involves the very existence" of the Holding Company, requiring its joinder in this action. *See Odom v. Posey*, 2009 WL 2356865, at *5 (E.D. La. July 27, 2009) ("[T]he limited liability company in this case … would be prejudiced if [it] were absent from this lawsuit. As in *Bankston* [*v. Burch*, 27 F.3d 164 (5th Cir. 1994)], where the plaintiffs sought the dissolution of the partnership, the gravamen of the claims in this case involves the very existence of [the LLC], as the plaintiffs seek to declare the operating agreement, which governs the operation of the company, null and void."). As explained above, the Holding Company has not yet been dissolved, so its joinder is required to avoid the obvious prejudice to it.

Regarding the second factor, Nalty has not suggested any methods by which the prejudice could be lessened or avoided, and it is difficult to conceive of a method that could be used to avoid the prejudicial impact to Boucvalt and the Holding Company of proceeding in the absence of the latter. *See Doty v. St. Mary Par. Land Co.*, 598 F.2d 885, 887-88 (5th Cir. 1979); *El Paso E&P Co. v. Crabapple Props., Ltd.*, 2008 WL 2051109, at *10 (W.D. La. Mar. 6, 2008), *adopted*, 2008 WL 11515716 (W.D. La. May 9, 2008). As for the third factor, a judgment rendered in the Holding Company's absence would not be adequate because Nalty seeks relief against Boucvalt, personally, that can only be sought from the LLC, including, most significantly, judicial dissolution, but also the claims for accountings and for inspection of the company's books. Finally, concerning the fourth of the Rule 19(b) factors, it is undisputed that the present action could be brought in a Louisiana state court, where complete relief could be afforded among all

parties. Indeed, with the Holding Company being a Louisiana LLC, the state of Louisiana has a "fundamental concern" with the litigation. *See Doty*, 598 F.2d at 888 (citing *Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885, 889 (5th Cir. 1968)); *Williams*, 2023 WL 2989465, at *4. Moreover, the Court notes that litigation between these parties – including the Holding Company – is already pending in Louisiana state court.[44]

Nalty has sought relief that substantially involves, and can only be afforded against, the Holding Company, and therefore "equity and good conscience" dictate that the action cannot proceed among only the existing parties.

### C. Dismissal for Lack of Diversity Jurisdiction

"Complete diversity 'requires that all persons on one side of the controversy be citizens of different states than all persons on the other side.'" *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)). "The inquiry into the existence of complete diversity requires considering the citizenship even of absent indispensable parties." *Bankston*, 27 F.3d at 168. Here, the Holding Company is an indispensable party whose citizenship must be considered. The citizenship of an LLC "is determined by the citizenship of all of its members." *Harvey*, 542 F.3d at 1080. Nalty and Boucvalt, the Holding Company's only members, are citizens of Florida and Texas, respectively,[45] so the Holding Company is also a citizen of Florida and Texas. This suit must be dismissed under Rule 12(b)(1), because it cannot proceed without the company, but adding the company would destroy diversity jurisdiction.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

---

[44] *See* R. Doc. 25-10.
[45] R. Doc. 1 at 1.

17

IT IS ORDERED that Boucvalt's motion to dismiss (R. Doc. 25) is GRANTED.

New Orleans, Louisiana, this 20th day of February, 2024.

                                                                          BARRY W. ASHE
                                                                          UNITED STATES DISTRICT JUDGE